The next case is number 21-1880 United States v. Darren Franklin. At this time, would Attorney Shapiro come to the podium and introduce himself on the record to begin? Good morning, Your Honor. May it please the Court. My name is Jonathan Shapiro, and I represent the defendant, Appellant Darren Franklin. In this case, it's our contention that the District Court violated the defendant's right under Rule 32.1b2c by revoking his supervised release on the basis of a police officer's No justification for producing the declarant, and the Court made no determination whatsoever that the interest of justice did not require the witness to appear. This issue was adequately preserved for review on appeal in the following manner. Mr. Shapiro, I'm interested in the standard of review. I've read the transcript of the revocation hearing, and Rule 32.1, the relevant provision, was never mentioned during the revocation hearing. There were DFA objections, and objections to reliability. Those were the only objections that I was able to find. Where did you preserve the objections? Well, the objection was first raised at the preliminary hearing. What about the revocation hearing? Well, this was the preliminary revocation hearing, at which time the defendant argued that he should not be required to proceed without live witnesses. At that time, the government offered no justification for not producing the witness, and the Court made no determination at that point, at the preliminary hearing, that the witness need not appear for the interest of justice. Now, subsequently, at the final revocation hearing, you're correct that no specific objection was made under Rule 32.1's limited confrontation right. However, it was clear, by virtue of the objections made to the admission of that testimony, that defendant was arguing that he had a right to cross-examine the witness. And that repeated objection was, in our view, sufficient to preserve the issue on appeal. Now, where in that, you're saying the transcript of the revocation, the final revocation hearing, shows that he sought to cross-examine the witness? In that the objection was repeatedly made to the admission of the hearsay statements of the officer. Right, but that, there's two different versions of what that argument could be. One is that it's not reliable. The other is that I have a right to cross-examine that witness. That is true, and certainly that objection, on the basis of reliability, was raised as well. Correct, and that seems well-preserved. The question is, with respect to the unavailability of the witness, was there any objection preserved as to that? Not specifically. However, it's our position that Rule 32.1 is clear, that the government has an obligation, without a request by the defendant, to get the court's approval to go forward without— We haven't held that before, right? Really? We have not held that before. And my understanding is that other circuits have held the opposite as to that. So if it wasn't preserved, it's hard to see how, even if you think it's clear or obvious, that the district court has to make that finding, even if not asked. It seems hard to see how the case law supports the notion that it's clear or obvious that the district court must do so. In the Colin Maldonado case, this court rejected a similar argument by the government, where there was no specific objection under Rule 32.1. But was the unavailability issue in play there? I thought the focus there was just on the reliability question. So in other words, here, you can also separately challenge the district court's ruling about the reliability, but you seem to be separately making an argument, which I understand why you're making it, which is there was no finding about the unavailability of the witness. And I didn't understand Maldonado to address that question. Well, in Colin Maldonado, the government argued that even though the reliability of the witness had been raised below, the failure to specifically raise the 32.1 argument was... Yeah, and that might be true here. The difficulty is 32.1 has two components. There's a reliability determination in there, and there's an unavailability determination, and there's the balancing. And here, at least from what you've said so far in your argument this morning, you're focused on the fact that there was no finding about unavailability. And as you acknowledge, there's nothing in the final revocation hearing where any objections are made about a lack of finding about unavailability. And you're right that in Maldonado, an objection about reliability was treated not just as a due process objection, but as an objection under Rule 32.1. But Maldonado didn't address whether just complaining about reliability suffices to preserve an objection to a failure to make a finding about unavailability. You're now asking us to, in effect, say that if I complain about reliability, that implicitly also is a request for you to make an unavailability finding as a judge. And I'm not seeing what authority supports that or what authority supports the idea that it's clear or obvious that that finding must be made by the district court, even if not assigned. I think in Maldonado, the argument below was based on reliability. However, on appeal, the defendant argued the 32.1 limited confrontation right. And at that point, the government said, well, you've waived that right, and the court said it didn't waive the right by failing to raise it. But in then deciding the case, it didn't identify the problem with what the district court had done as failing to make an unavailability finding. That's true. However, we think that decision is authority for our argument here. And we think also, as the government argues in its brief, that the district court, by its citation of the Bueno-Beltran case, was well aware of its obligation to weigh reliability against the government's argument. The practical concern is the following, which is that in the revocation hearing, you have a defendant who's complaining about the intrinsic reliability of the statement, that it's not detailed, no reason to believe her, blah, blah, blah. Never says a word about there being any concern that the person wasn't available. And there's at least a facially plausible reason for the person not being available. Not enough on its own, but the concern is that the district court is then led to believe your only concern is with the intrinsic reliability of the statement. So there's no one fighting about unavailability. Then he rules and says, no, I disagree with your argument, it's not reliable. Then all of a sudden, on appeal, the defendant says, oh, well, you didn't make an unavailability finding. Well, the district court was never asked to make that finding, and so the risk is that if we take your view, it creates a situation where either the district court must, every single time, make an unavailability finding, even when not asked to do so, which does not seem to be what the case law is, or we invite a kind of sandbagging opportunity, which is pretty wasteful. So what's the answer to that concern? Well, I think the answer is that Rule 32.1 is clear on its face, and it places an obligation on the government, which this court has admonished the government about six years ago in the Marino case for failing repeatedly to explain why it ignored its obligation. I think the rule is clear enough so that, and particularly given the government's admission that the district court was aware of it, yes, the district court, under a clear rule, should make that determination. If the government fails to explain, the district court should ask the government why it hasn't produced the witness. That's easy, and given the clarity of the rule, we think that the rule in the other circuits, which say that so long as you object to the admissibility of the evidence, that that should be sufficient to preserve what is a very important right that has decades of Supreme Court precedent. I just want to give you, I know your time's up, but just if you could take a minute or two to talk about your separate contention that the unavailability finding error aside, claim bearer aside, that the statement itself is simply not reliable. Yes, we certainly rely upon that, and also we rely upon the fact that there was no basis, as the government now claims, for the court to assume that the government had a valid reason. The only obvious reason that the government didn't call the witness was that the government knew that the witness, who had recanted under oath, would undermine its case, and so the explanation that the government didn't want to provide exculpatory evidence should not in any way excuse its failure to present the witness. Judge Selya, anything further? Judge Howard? Thank you, Your Honor. Thank you, counsel. At this time, would Attorney Eisenstadt come to the podium and introduce herself to begin? May it please the Court, Karen Eisenstadt for the government. Ms. Eisenstadt, can I ask you to stop where Mr. Shabiro ended? The objection to reliability is preserved, and why does the government say that objection is valid? Okay. So the reliability claim is preserved, as the government said in its brief, and that's on abuse of discretion review. So the district court's finding that the gun statement was reliable is not abuse of discretion because of the independent corroboration that was present there. The witness had made consistent statements about seeing the black pouch or bag to three different people and to two people that there was a gun that she saw what appeared to be a gun in the black pouch, and two of those statements were made before the guns were actually found in black pouches in a box on the porch. So the only way to find that what she said before the guns were found was not reliable is to conclude that she framed him. She actually orchestrated this entire thing. She either planted them there, knew they were there, called and set him up. But that's just not plausible on these facts. So she could not orchestrate, for example, where he was standing. What about the frying pan incident? The frying pan incident, I think the court's reasoning there was in relation to the gun statement. So the court's reasoning was here we have two statements, same declarant, to the same person, Officer Donovan, in the same encounter, and for which the defendant has offered the same motive to lie for that witness, which is she's jealous and she is lying to get back at me. And that claimed motive, I think if you analyze the two statements, is stronger for the gun statement because at that point he had not been arrested, the guns hadn't been found, and in addition the issue with the state grand jury testimony applied only to the gun statement. I think the district court supportedly found that the gun statement nevertheless was reliable. I mean, based on the independent corroboration, it was a true statement. And that for that reason. But because she makes one true statement about one incident, we should presume that a statement that she makes about another incident is true? I think the logic here is that why if she told the truth about the gun before he was arrested, would she right after he was arrested, not volunteering but in answering questions for this domestic violence checklist, just fabricate an assault that occurred two months prior? It doesn't make any sense. The motive to lie doesn't make any sense in that context, and it hasn't held up with the gun statement already. And I think in addition to, you know, the relationship between the statements here, what we have, which I think was missing in the Tavares and the Colon Maldonado cases, where the court found the statements weren't reliable, is the context. It's a very rich context, the surrounding circumstances. You know, the probation officer who testified knew this declarant for some time because she had been the probation officer for Mr. Franklin while he was on supervised release and he had been living with her. They were familiar with each other. It's not someone who just called out of the blue, as in Tavares, and said, hey, the defendant, you know, apropos of nothing, the defendant pulled a gun on me. We have the background of the relationship between her and the defendant. That's established, not disputed. How it soured, which is what the court said was missing in Colon Maldonado, we don't even know. We know they were together. She was his girlfriend, but, you know, how long? What's the relationship? When did it go downhill such that, you know, this claimed assault occurred? Here we have all that information, not only from the declarant's own statements about the souring of the relationship, the timing of that, but also the probation officer, Light Allard, testified to that also and said that, you know, Mr. Franklin had said the same thing to her. The relationship was, you know, strained. It was on the downhill at this point and at the time that this frying pan incident was alleged to have occurred. There's also, in addition, the son's role in protecting his mother is consistent with what Officer Dunovan sort of personally observed when he was there that day with the son consoling his mother, saying cooperate with the police. That's all consistent with what we see. And also the declarant's reason that she gave as to why she didn't report that frying pan assault at the time it occurred is consistent with what she says to numerous people on this record, you know, I'm afraid, I don't want to be involved with getting him in trouble. So I think the richness of the context also gives this statement a ring of truth that was missing in some of the other cases that he cites where, you know, all we had was an allegation, hearsay allegation, and nothing more. If the Court doesn't have further questions on the reliability piece, I'd like to just briefly address the issue of the balancing test, which Mr. Shapiro had spoken about. So on that issue, if you look at the record. Counsel, just if the hearsay statements about the assault are excluded, we don't have a grade A violation. Is my understanding correct there? That's correct. So in that situation, it still would be mandatory revocation because of the gun, but the guidelines range would change. So an appropriate remedy then would be remand for resentencing on the revocation. So he didn't raise at the revocation hearing the balancing test. I'm just going to say one last thing. I forget. Did the District Court address the evidence in the record that the statement had been recanted or at least that the statement had been said? I don't recall. I think in the District Court's written order, it's not directly addressed. And, of course, to clarify, what happened at the state grand jury concerned only the gun statement, not the assault statement. That just didn't come up. And it's not the type of recantation he suggests as if the witness had actually disavowed her prior statement or said, I was framing him. Actually, none of that happened. What occurred, if the court looks at the grand jury transcript, is that she was asked, I would say, an artfully worded question by the state prosecutor, gave what I think the state prosecutor thought was an unexpected answer. He thought she would say yes. She said no. And then there was no follow-up. The issue was just bypassed. So that was the circumstance of the recantation. She didn't repeat the allegation there, but arguably she wasn't really pressed on the issue either. Did the District Court address that? So the District Court did not directly address it in her order. However, it was argued by Mr. Franklin at length in the revocation hearing. And the District Court was certainly aware and had, of course, the transcript, was certainly aware that that was his argument. And I think you can infer from the District Court's order that she just didn't find that persuasive, given the level of reliability based on the corroboration of the statement. And just to follow, the corroboration of the statement is the context that you're referring to? I'm speaking about the gun statement specifically, which is what was addressed in the state grand jury. So the assault issue about the frying pan assault never came up in the state grand jury. And so that transcript and that testimony had nothing to suggest that at any point she backed away from the statement about the frying pan incident. That's correct. That's correct. So the independent corroboration I was referring to was with respect to the gun. So he did not ask to cross-examine this witness at any point during the revocation hearing. If you scour the record, you won't see it. It's a reliability argument. And as the government has argued in its brief, that's a distinct claim. I think this Court has said so. In, for example, Malera-Diaz, there's sort of like hearsay is a different objection. Reliability is a different issue. And further, the Court said the same thing, I think, in Colon-Maldonado. As Judge Barron pointed out there, you know, the Court declined actually to determine whether 32.1 applied, but said, but there's a standalone reliability claim. That's a distinct claim, and we can review that, and that's preserved. And I also think – Let me just understand. You could bring a due process claim or you could bring a 32.1 claim, right? In the government's view, if I object to the reliability of a statement, have I only made a due process claim or has I also made a 32.1 claim? Only a due process claim. And does our precedent support that? I think Colon-Maldonado does. So if you look at footnote 7, which he cites in his reply from that case, the government disagrees with how he reads that case and thinks it says the exact opposite. So the government argued there. We believe he's forfeited both arguments. And the Court's response was, well, you know, these general statements about the evidence not being good enough, it's not sort of – can't meet the standard, et cetera, that's sufficient to call the District Court's attention to his more basic gripe, which was reliability, and that's what then the Court proceeded on. But it wasn't enough to invoke Rule 32.1's limited confrontation right, because that is an independent right, and merely saying reliability sounds like you're talking about this, you know, issue in Colon-Maldonado about due process, that the Court shouldn't rely on the statements. And I think the issue of sandbagging is a very real one here because, you know, it could be something that the defendant strategically does not raise because it doesn't want the Court to rely on the statements but also doesn't want the government to call the witness. So I think this is a situation where it makes sense to apply the contemporaneous objection requirement. Thank you. Anything further? Judge Salia? I'm concerned. Thank you. Thank you. That concludes argument in this case.